Lauren A. Shurman (#11243)
lauren.shurman@stoel.com
Tanner B. Camp (#17805)
tanner.camp@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 328-3131
Fax: (801) 578-6999

Cherylyn Egner (15129)
cegner@centralutahlaw.com
City Attorney
AMERICAN FORK CITY
233 S. Pleasant Grove Blvd.,
Suite 202
Pleasant Grove, UT 84062
Telephone: (801) 443-2380

*Attorneys for Defendants City of American Fork, David Bunker, and Brad Frost*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH TELECOMMUNICATION OPEN INFRASTRUCTURE AGENCY, | **MOTION TO DISMISS COMPLAINT** |
| Plaintiff, | Case No. 2:21-cv-00600 |
| v. | Magistrate Judge Daphne A. Oberg |
| CITY OF AMERICAN FORK, DAVID BUNKER, in his official capacity as American Fork City Administrator, and BRAD FROST, in his official capacity as American Fork City mayor, | |
| Defendants. | |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

I. STATEMENT OF RELIEF SOUGHT.................................................................... 1

II. STATEMENT OF ALLEGED FACTS ................................................................ 3

    A.    UTOPIA .......................................................................................... 3

    B.    Defendants ...................................................................................... 3

    C.    The ROW Agreement ...................................................................... 4

    D.    American Fork Denies Some of UTOPIA's Permits............................. 4

    E.    American Fork Terminates the ROW Agreement ................................. 5

    F.    UTOPIA's Requested Equitable Relief .............................................. 5

III. LEGAL STANDARD......................................................................................... 5

IV. ARGUMENT ..................................................................................................... 6

    A.    UTOPIA Fails to State a Preemption Claim Under Section 253(a)....................... 6

        1.    A Non-Telecommunications Provider Like UTOPIA Cannot Assert a Preemption Claim Under Section 253(a).    8

            a.    UTOPIA Is Not a Provider of Telecommunications Services. ........................................................................ 9

            b.    UTOPIA Is a Political Subdivision............................. 10

        2.    UTOPIA Does Not Challenge a State or Local Statute, Regulation, or Legal Requirement.    11

    B.    This Court Should Dismiss the Remaining State Law Causes of Action. ............ 13

        1.    The Court Should Decline to Exercise Supplemental Jurisdiction over the State Law Claims.    13

        2.    This Case Should Also Be Dismissed Based on the ROW Agreement's Mandatory and Enforceable Forum Selection Clause.    14

    C.    UTOPIA Fails to State a Claim Under Its Second and Fourth Causes of Action.................................................................................... 15

        1.    UTOPIA Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.    16

        2.    UTOPIA Fails to State a Claim Under Utah's Uniform Operation of Laws Provision.    18

            a.    UTOPIA Fails to Sufficiently Allege That Similarly Situated Persons Were Treated Differently. ................................ 19

i

        b.     UTOPIA Fails to Sufficiently Allege a Lack of Rational Basis. ........................................................................................... 21

V. CONCLUSION ....................................................................................................... 22

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Recovery Sys. LLC v. Am. Agencies LLC*,
  No. 2:13-CV-00283-DAK, 2013 WL 5969837 (D. Utah Nov. 7, 2013) .......................... 17, 18

*Alexander v. Bridgerland Tech. Coll.*,
  No. 1:20-cv-0079-DAK-DAO, 2021 WL 718712 (D. Utah Feb. 24, 2021) .......................... 14

*Alt. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ....................................................................................................... 15

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ..................................................................................................... 8, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 6

*Avtech Capital, LLC v. C & G Engines Corp.*,
  No. 2:19-cv-00541-JNP-DAO, 2021 WL 3774369 (D. Utah Aug. 25, 2021) ....................... 17

*Backbone Worldwide Inc. v. LifeVantage Corp.*,
  2019 UT App 80, 443 P.3d 780 ................................................................................ 16, 18

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson*,
  P.C., 956 F.3d 1228 (10th Cir. 2020) ............................................................................ 14

*Boldt v. Am. Fork City*,
  No. 2:20-CV-817-TC-DAO, 2021 WL 5731587 (D. Utah Dec. 2, 2021) ........................ 20, 21

*Canopy Corp. v. Symantec Corp.*,
  395 F. Supp. 2d 1103 (D. Utah 2005) .............................................................................. 17

*Cellco P'ship v. F.C.C.*,
  357 F.3d 88, 91 (D.C. Cir. 2004) .................................................................................... 10

*City of Auburn v. Qwest Corp.*,
  260 F.3d 1160 (9th Cir. 2001), *overruled on other grounds by Sprint
  Telephony PCS, L.P. v. Cty. of S.D.*, 543 F.3d 571 (9th Cir. 2008) ................................. 7, 8

*CNSP, Inc. v. City of Santa Fe*,
  755 F. App'x 845 (10th Cir. 2019) ................................................................................ 8, 9

iii

*Cox v. Cache County*,
   18 F. Supp. 3d 1251 (D. Utah 2014) ...............................................................................19, 20

*Crown Castle Fiber LLC v. City of Charleston*,
   448 F. Supp. 3d 532 (D.S.C. 2020) ..................................................................................12, 13

*Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*,
   No. 12-CV-6157 (CS), 2013 WL 3357169 (S.D.N.Y. July 3, 2013), *aff'd*, 552
   F. App'x 47 (2d Cir. 2014) .....................................................................................................9

*Excell, Inc. v. Sterling Boiler & Mech., Inc.*,
   106 F.3d 318 (10th Cir. 1997) ...............................................................................................15

*Glover v. Mabrey*,
   384 F. App'x 763 (10th Cir. 2010) .........................................................................................20

*Jacobsen v. Deseret Book Co.*,
   287 F.3d 936 (10th Cir. 2002) .................................................................................................4

*Kan. Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) ........................................................................................20, 21

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ...................................................................................................................15

*Milk 'N' More, Inc. v. Beavert*,
   963 F.2d 1342 (10th Cir. 1992) .............................................................................................15

*New Cingular Wireless PCS, LLC v. Cnty. of Marin Cal.*,
   No. 20-CV-07915-SI, 2021 WL 662171 (N.D. Cal. Feb. 19, 2021) ...................................8, 12

*Nixon v. Mo. Mun. League*,
   541 U.S. 125 (2004) ........................................................................................................7, 10, 11

*Oakwood Vill. LLC v. Albertsons, Inc.*,
   2004 UT 101, 104 P.3d 1226 .................................................................................................16

*Patterson v. Am. Fork City*,
   2003 UT 7, 67 P.3d 466 ..........................................................................................................22

*Qwest Corp. v. City of Santa Fe, N.M.*,
   380 F.3d 1258 (10th Cir. 2004) ...........................................................................................7, 8

*Robbins v. Oklahoma*,
   519 F.3d 1242 (10th Cir. 2008) ...............................................................................................6

iv

*Safe Streets All. v. Hickenlooper*,
  859 F.3d 865 (10th Cir. 2017) ...............................................................8, 9, 10, 11

*Salt Lake City Corp. v. Haik*,
  2019 UT App 4, 438 P.3d 913 ......................................................................19, 22

*Spencer v. Utah State Bar*,
  2012 UT 92, 293 P.3d 360 ...................................................................................19

*Sprint Telephony PCS, L.P. v. Cnty. of S.D.*,
  377 F. Supp. 2d 886 (S.D. Cal. 2005), *aff'd in part, rev'd in part*, 543 F.3d
  571 (9th Cir. 2008)...............................................................................................12

*Super. Commc'ns v. City of Riverview, Mich.*,
  881 F.3d 432 (6th Cir. 2017) ..........................................................................8, 12

*Team Master Plan, LLC v. Daniels*,
  No. 4:19-cv-00036-DN-PK, 2020 WL 2926662 (D. Utah June 3, 2020)............6, 17

*Tripoli v. Branch Banking & Tr. Corp.*,
  No. 2:12-CV-125-DN, 2012 WL 2685090 (D. Utah July 6, 2012) ..........................6

*Underground Constr. Co. v. City & Cnty. of S.F.*,
  No. C 01-3707 MMC, 2002 WL 1585628 (N.D. Cal. July 15, 2002) ..............10, 11

*United States v. Botefuhr*,
  309 F.3d 1263 (10th Cir. 2002) ......................................................................13, 14

*Va. Office for Prot. & Advocacy v. Stewart*,
  563 U.S. 247 (2011)................................................................................................8

*Veach v. Gen. RV Ctr.*,
  No. 2:19-CV-539-JNP-DAO, 2020 WL 9258452 (D. Utah May 27, 2020) ....14, 15

*Young Living Essential Oils, LC v. Marin*,
  2011 UT 64, 266 P.3d 814 ...................................................................................16

**Statutes**

28 U.S.C. § 1367(c)(3)................................................................................................13

47 U.S.C. § 153.............................................................................................................9

47 U.S.C. § 253................................................................................................. passim

Am. Fork Code Ch. 12 .....................................................................................18, 19, 22

v

Pub. L. No. 104-104, 110 Stat. 56 (1996) ........................................................................7

Utah Code § 11-13-203(1)(c) ........................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 5

**Constitutional Provisions**

Utah Const. Art. I, § 24 ....................................................................................5, 18, 19

**Other Authorities**

S. Rep. No. 230, 104th Cong., 2d Sess. 1 (1996) .......................................................11

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and the doctrine of *forum non conveniens*, defendants American Fork City ("American Fork"), David Bunker ("Mr. Bunker"), and Brady Frost ("Mayor Frost," and collectively with American Fork and Mr. Bunker, "Defendants") hereby move the Court to dismiss the Utah Telecommunication Open Infrastructure Agency's ("UTOPIA") Complaint ("Complaint") for failure to state a claim upon which relief can be granted.

## I. STATEMENT OF RELIEF SOUGHT

This litigation stems from a dispute as to whether American Fork is required to provide access to its rights-of-way to a group of other Utah cities that formed UTOPIA. UTOPIA is an interlocal agency that builds fiberoptic networks. It then leases the network to private internet service providers ("ISPs"), who in turn provide broadband services to customers. In 2018, American Fork and UTOPIA entered into an interlocal right-of-way agreement that allowed UTOPIA to apply for permits to construct fiberoptic cables and related structures in American Fork's rights-of-way. UTOPIA thereafter submitted permit applications to American Fork, some of which were approved and some of which were denied. American Fork eventually terminated the agreement in accordance with its terms, and this litigation ensued one year later.

While American Fork had every right to terminate the agreement, UTOPIA still asserts four causes of action: (1) breach of the right-of-way agreement against American Fork; (2) breach of the covenant of good faith and fair dealing in the right-of-way agreement against American Fork; (3) violation of section 253(a) of the Telecommunications Act ("TCA"), 47 U.S.C. § 253(a) ("Section 253(a)"), against Mr. Bunker and Mayor Frost; and (4) violation of the Utah Constitution's Uniform Operations of Laws Provision against all Defendants.

1

American Fork will eventually demonstrate that UTOPIA's claims are legally and factually flawed. As an interlocal agency, UTOPIA has no absolute right to provide services or access rights-of-way beyond the geographic borders of its member cities. But for purposes of this motion, the Court need not reach that overarching question. Rather, the Complaint can and should be dismissed in its entirety for the following reasons:

*First*, UTOPIA's Third Cause of Action for violation of Section 253(a) of the TCA fails because UTOPIA does not have a federal right to sue in equity under Section 253(a). UTOPIA is an interlocal agency consisting of a group of public municipalities. It is not a private provider of telecommunications services and, therefore, has no right to sue under Section 253(a). Moreover, while Section 253(a) is a preemption provision, UTOPIA has not identified any local laws or legal requirements that it claims are preempted. Instead, it brings its claim based on American Fork's decision to deny its requested permits. Section 253(a) can only be enforced, if at all, to preempt laws and legal requirements, not individual decisions.

*Second,* the Court should decline to exercise supplemental jurisdiction and dismiss UTOPIA's remaining state law claims. This case is in its infancy, and there is little reason to retain jurisdiction over the state law claims. Beyond that, the state law claims are subject to a mandatory forum selection clause, which provides that all disputes related to the right-of-way agreement "shall lie exclusively in the Fourth Judicial District, Utah County, State of Utah." Thus, the contract-based claims should be dismissed for that reason alone.

*Third*, to the extent this Court is inclined to consider UTOPIA's state law causes of action, it should dismiss UTOPIA's Second and Fourth Causes of Action for failure to state a claim for breach of the implied covenant of good faith and fair dealing and violation of the

Uniform Operation of Laws provision of the Utah Constitution, respectively.  UTOPIA has not

stated a claim for breach of the implied covenant of good faith and fair dealing because it has not

identified any implied promises that American Fork purportedly breached separate and apart

from the alleged breach of the right-of-way agreement.  UTOPIA has not stated a claim for

breach of the Uniform Operation of Laws provision because it has not alleged sufficient facts to

show that similarly situated applicants for permits were treated differently than UTOPIA.  To the

contrary, UTOPIA admits that the entities who allegedly received more favorable treatment are

distinguishable from it.

## II.  STATEMENT OF ALLEGED FACTS[1]

**A.    UTOPIA**

UTOPIA is an interlocal entity made up of eleven municipalities and formed pursuant to

the Utah Interlocal Cooperation Act ("Interlocal Act").  (Compl. ¶¶ 8, 9.)  UTOPIA's stated

purpose is to finance, build, and operate "infrastructure and related facilities necessary to provide

high-speed fiber-optic connections directly to residences, businesses, and government agencies

(the 'Network')."  (*Id.* ¶ 9.)  While UTOPIA provides access to the Network, it does not

generally "provide its customers with the broadband internet service that is required to use the

Network."  (*Id.* ¶ 10.)  Rather, it contracts with private ISPs to use its Network to provide

internet services to their customers.  (*Id.* ¶¶ 10, 12, 14.)

**B.    Defendants**

American Fork is a Utah municipality.  (*Id.* ¶ 3.)  Mr. Bunker is the City Administrator

for American Fork.  (*Id.*)  As such, Mr. Bunker oversees the administration of contracts and

---

[1] The allegations set forth in this section are taken from the Complaint and assumed to be true for
purposes of this motion only.

permits within American Fork.  (*Id.*)  Mayor Frost is the Mayor of American Fork.  (*Id.* ¶ 4.)
Mayor Frost and Mr. Bunker are sued in their official capacities.  (*Id.* ¶¶ 3-4.)

## C.     The ROW Agreement

In April 2018, UTOPIA and American Fork entered into the Interlocal Cooperation Right
of Way Licensing Agreement ("ROW Agreement").  (*Id.* ¶ 37; ROW Agreement (attached
hereto as "**Exhibit 1**").)[2]  The ROW Agreement gave UTOPIA a "non-exclusive license to lay,
maintain, operate, repair, inspect, protect, install, remove and replace" fiberoptic cable and other
transmission structures and facilities within American Fork's public rights-of-way.  (Compl. ¶ 38;
ROW Agreement at 1.)  Before constructing and maintaining these facilities, however, UTOPIA
was required to apply for and receive permits for each individual project.  (Compl. ¶ 39; ROW
Agreement at 2.)  The initial term of the ROW Agreement was 10 years, but either party could
terminate the agreement "upon 90 days written notice."  (ROW Agreement at 1; *see* Compl. ¶ 42.)

## D.     American Fork Denies Some of UTOPIA's Permits

UTOPIA alleges that from April 2018 to July 2020, it applied for several permits to
expand its Network in American Fork.  (*See* Compl. ¶¶ 43-64.)  In July 2020, American Fork
notified UTOPIA that it would approve some of the entity's then-outstanding permit requests but
deny the others.  (*See id.* ¶ 55.)  Specifically, UTOPIA alleges that American Fork approved
permits "involving the construction of backbone transport lines through American Fork to reach
other cities" but "denied any permits seeking to build service laterals" within the city.  (*Id.*)

---

[2] Even though UTOPIA did not attach a copy of the ROW Agreement to its Complaint, the Court
may consider the agreement's contents on this motion to dismiss because: (1) the Complaint
refers to the ROW Agreement extensively; (2) the agreement is central to UTOPIA's claims; and
(3) the parties do not dispute the document's authenticity.  *See Jacobsen v. Deseret Book Co.*,
287 F.3d 936, 941-42 (10th Cir. 2002).

4

UTOPIA claims that the denial of these permits was a breach of the ROW Agreement.  (*Id.* ¶ 91.)

E.      **American Fork Terminates the ROW Agreement**

UTOPIA alleges that in July 2020, American Fork notified UTOPIA that it was terminating the ROW Agreement.  (*See id.* ¶ 56.)  Pursuant to its terms, the ROW Agreement terminated 90 days thereafter.  (*See* ROW Agreement at 1.)

F.      **UTOPIA's Requested Equitable Relief**

UTOPIA alleges that it was the only permit applicant to be singled out for extra scrutiny by Mr. Bunker (*id.* ¶ 46), and that American Fork gave preferential treatment to other permit applicants who are telecommunications providers (*id.* ¶¶ 105, 107).  UTOPIA claims that Defendants' actions violate Section 253(a) of the TCA and Article I, section 24 of the Utah Constitution.  (*Id.* ¶¶ 108, 114.)  UTOPIA seeks a declaratory order that "the discriminatory and preferential actions of Defendants Bunker and Frost" are "preempted and unenforceable" and an injunction "enjoining Defendants Bunker and Frost from continuing their discriminatory and preferential actions."  (*Id.* ¶ 27.)

## III.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive dismissal under this rule, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action" and "conclusory allegations" are insufficient, and this Court "is not bound to accept the complaint's

5

legal conclusions and opinions, even if they are couched as facts." *Team Master Plan, LLC v. Daniels*, No. 4:19-cv-00036-DN-PK, 2020 WL 2926662, at *1 (D. Utah June 3, 2020). Rather, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Dismissal is appropriate if there is a "lack of a cognizable legal theory or insufficient facts alleged under a cognizable legal theory." *Tripoli v. Branch Banking & Tr. Corp.*, No. 2:12-CV-125-DN, 2012 WL 2685090, at *1 (D. Utah July 6, 2012).

## IV.  ARGUMENT

UTOPIA's Third Cause of Action fails because UTOPIA does not have a federal right under Section 253(a) that allows it to sue in law or equity. Thus, UTOPIA's Third Cause of Action should be dismissed. And, because the Third Cause of Action is UTOPIA's only federal hook, this Court should decline to exercise supplemental jurisdiction and dismiss UTOPIA's remaining state law claims. Alternatively, this Court should dismiss the state law claims based on the ROW Agreement's mandatory forum selection clause, which provides that all disputes related to the ROW Agreement "shall lie exclusively in the Fourth Judicial District, Utah County, State of Utah." And, lastly, to the extent this Court is inclined to consider UTOPIA's state law causes of action, it should dismiss UTOPIA's Second and Fourth Causes of Action for failure to state a claim.

### A.    UTOPIA Fails to State a Preemption Claim Under Section 253(a).

Section 253(a) authorizes preemption of state or local laws and regulations that prohibit entities from providing telecommunications services. Specifically, it provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the

effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).  State or local statutes or regulations that violate subsection (a) are subject to preemption "to the extent necessary to correct such violation or inconsistency." *Id.* § 253(d).[3]

In its Third Cause of Action, UTOPIA seeks to enjoin Mr. Bunker and Mayor Frost from continuing to deny UTOPIA's permit applications and the cancellation of the ROW Agreement,[4] claiming that these actions violate Section 253(a).  More specifically, UTOPIA claims that Mr. Bunker and Mayor Frost should be enjoined from granting preferential access to American Fork's rights-of-way to "competitors of the companies that wish to use UTOPIA's Network." (Compl. ¶¶ 102-05.)[5]

This claim fails for at least two reasons.  *First,* Section 253(a) confers no federal right on a public entity like UTOPIA that does not provide telecommunications services.  *See Nixon v. Mo. Mun. League,* 541 U.S. 125, 138 (2004); *CNSP, Inc. v. City of Santa Fe,* 755 F. App'x 845, 849 (10th Cir. 2019); *Qwest Corp. v. City of Santa Fe, N.M.,* 380 F.3d 1258, 1266-67 (10th Cir. 2004).  And, even if it did, UTOPIA fails to state a claim under Section 253(a) because it is not challenging a state or local statute, regulation, or legal requirement.  *See New Cingular Wireless*

---

[3] The purpose of the TCA is to promote competition among and reduce regulation of telecommunications providers.  Pub. L. No. 104-104, 110 Stat. 56 (1996); *City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1170 (9th Cir. 2001), *overruled on other grounds by Sprint Telephony PCS, L.P. v. Cty. of S.D.,* 543 F.3d 571 (9th Cir. 2008).

[4] The Third Cause of Action alleges that American Fork has engaged in "preferential treatment" of certain entities in violation of Section 253(a), but it ostensibly only seeks to enjoin Mr. Bunker and Mayor Frost from engaging in these "preferential actions."  (*See* Compl. 27 & ¶¶ 98-109.)

[5] It does not appear that UTOPIA seeks damages under its Third Cause of Action.  Section 253(a) does not provide a private cause of action for damages.  *See Qwest Corp. v. City of Santa Fe, N.M.,* 380 F.3d 1258, 1265-67 (10th Cir. 2004).

7

*PCS, LLC v. Cnty. of Marin Cal.*, No. 20-CV-07915-SI, 2021 WL 662171, at *5-6 (N.D. Cal. Feb. 19, 2021).  Accordingly, UTOPIA's Third Cause of Action should be dismissed.

### 1.   A Non-Telecommunications Provider Like UTOPIA Cannot Assert a Preemption Claim Under Section 253(a).

Most circuit courts, including the Tenth, "have concluded that § 253(a) does not grant a private right of action."  *Super. Commc'ns v. City of Riverview, Mich.*, 881 F.3d 432, 443-44 (6th Cir. 2017) (collecting cases); *see Qwest*, 380 F.3d at 1265-67.  Although the Tenth Circuit noted in *Qwest* that a party could nevertheless still "bring a claim under the Supremacy Clause that a local enactment is preempted," *Qwest*, 380 F.3d at 1266, the Supreme Court later clarified that no "implied right of action [is] contained in the Supremacy Clause," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).  Rather, the ability of a private citizen to sue to enforce the Supremacy Clause "is the creation of courts of equity."  *Armstrong*, 575 U.S. at 327. And, to invoke a federal court's equitable powers, "a plaintiff asserting a cause of action to enforce a federal statute must have 'a federal right that he or she possesses against the defendant.'"  *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017) (brackets omitted) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 260 (2011)).  In other words, "unless a private plaintiff has been given *a federal right of his or her own to vindicate* [under the statute at issue], the plaintiff cannot maintain a cause of action—in law or equity—against any defendant for violating [the federal statute]."  *Id.* (emphasis added); *see also CNSP*, 755 F. App'x at 849 (remanding case to the district court to consider plaintiff's claim for preemption under Section 253(a) in light of *Armstrong* and *Safe Streets*).

8

Here, UTOPIA does not have a "federal right of [its] own to vindicate" under Section 253(a) because it is not a provider of telecommunications services and is a political subdivision of the State of Utah.

### a. UTOPIA Is Not a Provider of Telecommunications Services.

*First*, UTOPIA does not have a federal right under Section 253(a) because it is not a telecommunications services provider.  Section 253(a) removes state and local barriers to entry for providers of "telecommunications service."  *See* 47 U.S.C. § 253(a) (preempting state and local laws that "may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate *telecommunications service*" (emphasis added)).  "Telecommunications," means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received."  *Id.* § 153(50).  And "[t]elecommunications service" is defined as "the offering of telecommunications for a fee directly to the public."  *Id.* § 153(53).  Given these definitions, "[a] provider of 'telecommunications service' has been interpreted to be coextensive with 'common carrier'—that is, a provider that holds itself out indiscriminately" to serve potential users.  *Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*, No. 12-CV-6157 (CS), 2013 WL 3357169, at *15 (S.D.N.Y. July 3, 2013), *aff'd*, 552 F. App'x 47 (2d Cir. 2014).

Here, UTOPIA expressly acknowledges that, while it provides the necessary "infrastructure and related facilities to provide high-speed fiber-optic connections," it "generally does not provide its customers with the broadband internet service that is required to use" such infrastructure.  (Compl. ¶¶ 9-10; *see also id.* ¶ 14 ("UTOPIA makes it possible for [private ISPs] to provide telecommunications services.").)  Entities that build infrastructure for

9

telecommunications providers are not themselves providers of "telecommunications service" with rights under Section 253(a).  *See Underground Constr. Co. v. City & Cnty. of S.F.*, No. C 01-3707 MMC, 2002 WL 1585628, at *2 (N.D. Cal. July 15, 2002) (finding that a construction company that installed "conduit for telecommunication providers" was not a telecommunications provider and was not within the "zone of interest" protected by Section 253(a)).  Thus, UTOPIA does not have a federal right under Section 253(a) to vindicate and cannot maintain a cause of action against Defendants for allegedly violating the statute.  *See Safe Streets All.*, 859 F.3d at 902.

### b.    UTOPIA Is a Political Subdivision.

*Second*, UTOPIA does not have a federal right under Section 253(a) because it is a political subdivision of the State of Utah.  In *Nixon*, 541 U.S. 125, the Supreme Court limited the term "any entity" in Section 253(a) to mean that state or local laws are preempted to the extent that they prohibit the ability of "any *private* entity" to provide any interstate or intrastate telecommunications service.  *Id.* at 133 (emphasis added).  Indeed, the Supreme Court expressly ruled that the term "any entity" in Section 253(a) does not include a state's own political subdivisions.  *Id.* at 138; *see also id.* at 129.  Thus, to the extent Section 253(a) provides a federal right, it does so only for private sector providers of telecommunication services.  *See id.* at 133; *Cellco P'ship v. F.C.C.*, 357 F.3d 88, 91 (D.C. Cir. 2004) (TCA was designed to create a "'pro-competitive, de-regulatory national policy framework designed to accelerate rapidly *private sector* development of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition'" (emphasis added) (quoting S. Rep. No. 230, 104th Cong., 2d Sess. 1 (1996))).

10

As UTOPIA acknowledges in its Complaint, it is an interlocal entity created pursuant to the Interlocal Act.  (Compl. ¶ 1.)  And the Interlocal Act provides that an "interlocal entity" is a "political subdivision of the state."  Utah Code § 11-13-203(1)(c).  As a political subdivision of the state, UTOPIA is not an "entity" within the meaning of Section 253(a) and, thus, does not have a federal right under the statute.

Because UTOPIA is not a private provider of telecommunications service, it does not possess a federal right under Section 253(a) that would allow it to invoke this Court's equitable powers.  *See Nixon*, 541 U.S. at 129; *Safe Streets*, 859 F.3d at 902; *Underground Constr. Co.*, 2002 WL 1585628, at *2.[6]  Consequently, UTOPIA's Third Cause of Action for an alleged violation of Section 253(a) fails as a matter of law.

### 2.    UTOPIA Does Not Challenge a State or Local Statute, Regulation, or Legal Requirement.

Because UTOPIA does not have a federal right under Section 253(a), UTOPIA's Third Cause of Action should be dismissed with prejudice.  Even if it did have a federal right (it does not), UTOPIA fails to state a claim under Section 253(a) because it does not challenge a "state or local statute or regulation, or other State or local legal requirement" that prohibits or has the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.  47 U.S.C. § 253(a).

While Section 253(a) may provide a cause of action "against *local regulations*," it does not provide a cause of action "against *local decisions.*"  *See New Cingular*, 2021 WL 662171, at

---

[6] UTOPIA also cannot invoke the alleged rights of "private ISPs who wish to use UTOPIA's Network" to maintain a claim under Section 253(a).  (*See* Compl. ¶ 109.)  UTOPIA must have a "federal right of [its] own to vindicate" to maintain a cause of action against Defendants.  *Safe Streets*, 859 F.3d at 902.

11

*5-6; *see also Sprint Telephony PCS, L.P. v. Cnty. of S.D.*, 377 F. Supp. 2d 886, 891 (S.D. Cal. 2005), *aff'd in part, rev'd in part*, 543 F.3d 571 (9th Cir. 2008); *Super. Commc'ns*, 881 F.3d at 443-44.

In *New Cingular*, a wireless telecommunications company challenged a county's denial of its application "for a use permit to allow for construction and operation of a wireless communications facility." *New Cingular*, 2021 WL 662171, at *1. The telecommunications provider argued that the county's denial of the application violated Section 253(a) because it "'effectively prohibits' plaintiff from providing wireless services." *Id.* at *6. The court held that the provider did not state a Section 253(a) claim because the provider was not challenging a county "ordinance, regulation, guideline, or legal requirement," but rather an "individual zoning decision." *Id.*

Likewise, on facts similar to those alleged here, in *Crown Castle Fiber LLC v. City of Charleston*, 448 F. Supp. 3d 532 (D.S.C. 2020), a fiber installation company sought to challenge a city's delay and inaction on its permit applications, and the city mayor's "discretionary involvement in the application review process" under Section 253(a). *Id.* at 542. The court held that the alleged conduct (*i.e.*, inaction on requested permits and the mayor's involvement in the permit review process) was not a "State or local statute or regulation, or other State or local legal requirement" under Section 253(a) and thus did not "fit[] within the plain language of the statute." *Id.* at 542-43.

Here, according to its plain language, UTOPIA's Third Cause of Action does not challenge a city "ordinance, regulation, guideline, or legal requirement." Rather, it challenges American Fork's "actions" in refusing to approve UTOPIA's permit applications. (*See* Compl. ¶

12

107.)  American Fork's "actions" are not a "statute, regulation, or legal requirement" within the meaning of Section 253(a).  UTOPIA's Third Cause of Action therefore fails to state a claim and should be dismissed.

**B.     This Court Should Dismiss the Remaining State Law Causes of Action.**

The only basis for federal subject matter jurisdiction in UTOPIA's Complaint is the federal question raised by the Third Cause of Action.  (*See id.* ¶ 5.)  Each of the remaining claims in the Complaint rests on Utah state law grounds.  (*See id.* ¶¶ 88-97, 110-14.)  But, as explained above, the Third Cause of Action fails as a matter of law.  Accordingly, this Court should decline to exercise supplemental jurisdiction over the state law claims and dismiss this case in its entirety. The Court should also dismiss the remaining state law claims because they are subject to a mandatory forum selection clause.

**1.     The Court Should Decline to Exercise Supplemental Jurisdiction over the State Law Claims.**

"[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002); *see* 28 U.S.C. § 1367(c)(3) (providing a district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction").  This is especially true where there is no showing "the parties have already expended a great deal of time and energy on the state law claims," *Botefuhr*, 309 F.3d at 1273, and where the federal claims are "dismissed early in the litigation," *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson*, P.C., 956 F.3d 1228, 1231, 1239 (10th Cir. 2020) (explaining Tenth Circuit's practice is to dismiss state claims "when the claims over which the district court had original jurisdiction

13

are dismissed on pretrial motion"); *Alexander v. Bridgerland Tech. Coll.*, No. 1:20-cv-0079-DAK-DAO, 2021 WL 718712, at *4 (D. Utah Feb. 24, 2021) (stating supplemental jurisdiction "usually should not be exercised when the federal claims have been dismissed," and collecting cases). That is the case here.

This case is in the early pleading stage of litigation; no discovery or other pretrial activity has taken place. The parties have not expended much time and energy on the state law claims, and UTOPIA's only federal claim should be dismissed as part of the instant motion. Thus, this Court should decline to exercise supplemental jurisdiction over the state law claims and dismiss this case in its entirety.

### 2. This Case Should Also Be Dismissed Based on the ROW Agreement's Mandatory and Enforceable Forum Selection Clause.

In the ROW Agreement, the parties agreed that "any dispute related to" the agreement would be heard "exclusively in the Fourth Judicial District, Utah County, State of Utah." (ROW Agreement at 5.) This clause is mandatory and should be enforced so that the state law claims are heard in the agreed-upon forum.

When determining the enforceability of a forum selection clause under federal common law, courts first look to whether the clause at issue is mandatory or permissive. *See Veach v. Gen. RV Ctr.*, No. 2:19-CV-539-JNP-DAO, 2020 WL 9258452, at *5 (D. Utah May 27, 2020). Mandatory forum selection clauses "contain clear language showing that jurisdiction is appropriate only in the designated forum," whereas permissive forum selection clauses "authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (brackets, citations, and internal quotation marks omitted)). Here, the forum selection clause states: "Venue for any

14

dispute related to this Agreement *shall* lie *exclusively* in the Fourth Judicial District, Utah County, State of Utah." (ROW Agreement at 5 (emphasis added).) Because the clause provides that venue "shall" be "exclusively" in the Fourth District, the clause is mandatory. *See Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (holding that a clause providing that venue "shall" be in a particular county contains sufficiently clear language and is mandatory).

Where a forum selection clause is mandatory (like here), federal common law generally requires enforcement of the clause "unless the party opposing enforcement can 'clearly show that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching.'" *Veach*, 2020 WL 9258452, at *5 (brackets omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). This is a heavy burden, and the plaintiff's choice of forum "'merits no weight.'" *Id.* (quoting *Alt. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)). The appropriate way to enforce a forum selection clause "pointing to a state or foreign forum" is dismissal under the doctrine of *forum non conveniens*. *Alt. Marine*, 571 U.S. at 60, 66 n.8.

Here, the state law claims in the Complaint relate to American Fork's alleged breach or cancellation of the ROW Agreement. Thus, the forum selection clause is enforceable as to those claims and requires that they be dismissed under the doctrine of *forum non conveniens*.

C.     **UTOPIA Fails to State a Claim Under Its Second and Fourth Causes of Action.**

If this Court chooses to consider the state law claims, UTOPIA fails to state a plausible claim for relief under its Second Cause of Action (alleged breach of the covenant of good faith and fair dealing) and its Fourth Cause of Action (alleged violation of the Utah Constitution's

Uniform Operation of Laws provision). This Court should therefore dismiss these claims even if retains jurisdiction over them.

1.  **UTOPIA Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

The covenant of good faith and fair dealing "inheres in every contract" and prohibits a party "from intentionally injuring the other party's right to receive the benefits of the contract." *Backbone Worldwide Inc. v. LifeVantage Corp.*, 2019 UT App 80, ¶ 16, 443 P.3d 780, 785 (brackets, citations, and internal quotation marks omitted); *see also Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226, 1239 (explaining that the covenant of good faith and fair dealing requires "each party to refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract" (citation and internal quotation marks omitted)). But the covenant's role is a limited one. *See Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 9, 266 P.3d 814, 816-17. It cannot be used to "create rights and duties inconsistent with express contractual terms." *Oakwood Vill.*, 2004 UT 101, ¶ 45, 104 P.3d at 1240.

Moreover, the covenant of good faith and fair dealing "is not an alternative method for enforcing the written provisions of a contract." *Avtech Capital, LLC v. C & G Engines Corp.*, No. 2:19-cv-00541-JNP-DAO, 2021 WL 3774369, at *3 (D. Utah Aug. 25, 2021) (citation and internal quotation marks omitted). Rather, a plaintiff alleging breach of the covenant of good faith and fair dealing must "demonstrate some implied promise separate from a breach" of the contract at issue. *See Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1111 (D. Utah 2005). "A claim for breach of the implied covenant that is redundant of the underlying breach of contract claim is subject to dismissal." *Team Master Plan, LLC v. Daniels*, No. 4:19-cv-00036-

16

DN-PK, 2020 WL 2926662, at *3 (D. Utah June 3, 2020); *see also Advanced Recovery Sys. LLC v. Am. Agencies LLC*, No. 2:13-CV-00283-DAK, 2013 WL 5969837, at *6 (D. Utah Nov. 7, 2013) (holding that where allegations supporting the breach of the covenant of good faith and fair dealing "are based on the express terms of the contract, courts must rely solely on the contract itself and cannot entertain claims based on an implied duty to perform in good faith" (citation and internal quotation marks omitted)).

Here, UTOPIA alleges that American Fork breached the covenant of good faith and fair dealing by (1) refusing to approve or grant UTOPIA's permit applications and (2) terminating the ROW Agreement for "improper purposes." (Compl. ¶ 96.) American Fork's alleged refusal to approve or grant UTOPIA's permit applications is identical to the breach of contract alleged under UTOPIA's First Cause of Action. (*Compare id.* ¶ 91 *with id.* ¶ 96.) As such, it is "redundant" of the breach of contract claim and cannot form the basis of a separate claim for breach of the implied covenant of good faith and fair dealing. *See Team Master Plan*, 2020 WL 2926662, at *2-3.

Similarly, the parties' rights and obligations regarding termination of the ROW Agreement flow directly from the agreement rather than implied promises between the parties. *See Advanced Recovery*, 2013 WL 5969837, at *6. And UTOPIA's allegation that the termination was for "improper purposes" does not rescue the claim. Under the ROW Agreement, either party had the right to terminate the agreement "upon 90 days prior written notice." (ROW Agreement at 1.) Thus, "purposes" for terminating the ROW Agreement are irrelevant. *See Backbone Worldwide*, 2019 UT App 80, ¶ 24, 443 P.3d at 787 ("[A]s long as the party has an express and objectively determined right to terminate . . ., that party may exercise that right, and

17

its motives for doing so are irrelevant, despite the existence of the implied covenant." (citations

omitted)).  Concluding otherwise would allow the covenant of good faith and fair dealing to

"displace or vary express contractual rights," which the law does not allow.  *Id.*

Put simply, UTOPIA does not allege any implied promises that American Fork

purportedly breached separate and apart from the alleged breach of contract.  The Second Cause

of Action is therefore deficiently pled and should be dismissed.

2.    **UTOPIA Fails to State a Claim Under Utah's Uniform Operation of Laws Provision.**

Finally, under its Fourth Cause of Action, UTOPIA alleges that Defendants violated

Article I, section 24 of Utah's Constitution (the "Uniform Operations Provision") by not

applying uniformly Chapter 12 of American Fork's Code ("Chapter 12"), which regulates

construction in American Fork's rights-of-way.  (Compl. ¶¶ 113-14.)  Chapter 12 provides,

among other things, that no person shall construct a structure within the city's rights-of-way

"without first receiving approval of the city council and obtaining a permit therefor."  (*Id.* ¶ 26

(quoting American Fork Code 12.04.020).)  Chapter 12 also provides that "'[i]f, in the opinion of

the council, placement of such facilities or systems is in the best interest of the city, and will be

constructed and maintained without impairment to the health, safety and general welfare of the

city residents, the council may authorize such construction subject to any conditions which it

deems necessary to mitigate any adverse effects of such construction, and issue a permit

therefor.'"  (*Id.* ¶ 28 (quoting American Fork Code 12.04.030(B).))

The Uniform Operations Provision of the Utah Constitution provides that "[a]ll laws of a

general nature shall have uniform operation."  Utah Const. art I, § 24.  UTOPIA alleges

American Fork violated this provision because it "singled UTOPIA out" for additional scrutiny,

18

terminated the ROW Agreement "while entering into substantially identical franchise agreements with other fiber infrastructure providers," and refused to grant UTOPIA's permits while granting permits for similar projects.  (*Id.* ¶ 114.)

The Uniform Operations Provision is Utah's analog to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  *Spencer v. Utah State Bar*, 2012 UT 92, ¶ 26, 293 P.3d 360, 368.  It is "meant to forward the general principle that persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same."  *Salt Lake City Corp. v. Haik*, 2019 UT App 4, ¶ 72, 438 P.3d 913, 926 (citation and internal quotation marks omitted).

Here, UTOPIA asserts a "class of one" claim or "one in which a public official, with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen."  *Cox v. Cache County*, 18 F. Supp. 3d 1251, 1264 (D. Utah 2014) (citation and internal quotation marks omitted).  The burden on a plaintiff to allege such a claim is substantial.  A plaintiff must allege "that others similarly situated in *every material respect* were treated differently and that this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity."  *Boldt v. Am. Fork City*, No. 2:20-CV-817-TC-DAO, 2021 WL 5731587, at *8 (D. Utah Dec. 2, 2021) (emphasis added; brackets, citation, and internal quotation marks omitted)).  UTOPIA fails to sufficiently allege either of these requirements.

### a.   UTOPIA Fails to Sufficiently Allege That Similarly Situated Persons Were Treated Differently.

*First*, in "class of one" claims, a plaintiff must "set out specific examples of similarly situated individuals and differing treatment."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d

1210, 1219 (10th Cir. 2011); *see also Glover v. Mabrey*, 384 F. App'x 763, 778 (10th Cir. 2010) ("[Plaintiff] has failed to allege, as it must, the identity or characteristics of other similarly situated contractors and how those similarly situated contractors were treated differently."). "[C]ursory or conclusory allegations that others are similarly situated" are not enough. *Cox*, 18 F. Supp. 3d at 1266-67.

UTOPIA's similarly situated allegations are conclusory and lack the detail required to state a "class of one" claim. UTOPIA alleges that, "[o]n information and belief" it is the "only permit applicant" to be singled out by Mr. Bunker and that such scrutiny did not occur with "other telecommunications providers," that American Fork entered into other right-of-way and franchise agreements with other providers under similar terms, and that American Fork has granted permits for other similar fiber infrastructure projects. (Compl. ¶¶ 46-47, 62-64, 86, 114.) UTOPIA fails to provide any allegations describing how the "other telecommunications providers" are similar to UTOPIA in "all material respects." *Kan. Penn*, 656 F.3d at 1218 (emphasis and internal quotation marks omitted). To the contrary, UTOPIA's allegations only show that these "other telecommunications providers" are *dissimilar.* For example, UTOPIA alleges American Fork was interested in a proposal from Sumac/Municonsults specifically because it would be "*different* from other broadband projects such as . . . UTOPIA." (Compl. ¶¶ 65-66 (emphasis added).) UTOPIA also alleges that American Fork entered into franchise agreements with and granted rights-of-way access to CenturyLink, Veracity Networks, and Syringa Networks. (*Id.* ¶¶ 62, 63, 104, 105.) According to UTOPIA, these entities are *telecommunications providers* who provide internet services to customers. (*Id.* ¶¶ 13, 62, 63, 104, 105.) UTOPIA, on the other hand, admits that it does *not* provide customers with internet

20

service but instead provides the Network that telecommunications providers use to provide internet service to customers.  (*Id.* ¶ 10.)  Thus, UTOPIA fails to allege sufficient facts that similarly situated applicants for permits were treated differently than UTOPIA.  *See Boldt*, 2021 WL 5731587, at *8, *11.

### b.   UTOPIA Fails to Sufficiently Allege a Lack of Rational Basis.

*Second*, UTOPIA fails to sufficiently allege that American Fork lacked a rational basis for its treatment of UTOPIA.  To meet this component of "class of one" claims, UTOPIA must at least allege "that the defendant deliberately sought to deprive [it] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position"—in other words, "a showing of a totally illegitimate animus toward the plaintiff by the defendant." *Salt Lake City Corp.*, 2019 UT App 4, ¶ 73, 428 P.3d at 927 (citation and internal quotation marks omitted).

Here, there are no allegations that American Fork's purported treatment of UTOPIA stemmed from "a totally illegitimate animus" arising from "reasons of a personal nature."  *Id.* ¶¶ 73, 75, 428 P.3d at 927 (citation and internal quotation marks omitted).  Rather, at most, UTOPIA alleges that American Fork's treatment of UTOPIA stemmed from its desire to pursue telecommunications alternatives for its residents.  (Compl. ¶¶ 65-66); *see Patterson v. Am. Fork City*, 2003 UT 7, ¶ 34, 67 P.3d 466, 476 (concluding plaintiffs had failed to sufficiently allege their "class of one" equal protection claim where they had "not specifically alleged that any

unequal treatment they experienced was the result of intentional discrimination grounded in personal animus").[7]

Put simply, UTOPIA does not sufficiently allege a claim under the Uniform Operation Provision.  At best, UTOPIA alleges "uneven enforcement" of American Fork's right-of-way rules under Chapter 12, which is not enough.  *See Salt Lake City Corp.*, 2019 UT App 4, ¶ 73, 428 P.3d at 927. UTOPIA's Fourth Cause of Action should therefore be dismissed.

## V.  CONCLUSION

For the foregoing reasons, American Fork respectfully requests that this Court grant its motion and dismiss UTOPIA's Complaint in its entirety.

DATED:  January 3, 2022.

STOEL RIVES LLP


/s/ Lauren A. Shurman
Lauren A. Shurman
Tanner B. Camp

*Attorneys for Defendant American Fork City*

---

[7] To the extent UTOPIA specifically faults American Fork for terminating the ROW Agreement, American Fork had the right to terminate the agreement whenever it wanted "upon 90 days prior written notice."  (ROW Agreement at 2); *see Salt Lake City Corp.*, 2019 UT App 4, ¶ 74, 438 P.3d at 927 (finding that "class of one" discrimination allegations insufficient where the municipality had no legal duty to provide the services underlying the discrimination claim).

112915040.11 0058291-00003

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2021, a true and correct copy of the foregoing

**MOTION TO DISMISS COMPLAINT** was served via Court ECF Filing to the following:

> Juliette P. White
> Robert H. Hughes
> PARSONS BEHLE & LATIMER
> 201 South Main Street, Suite 1800
> Salt Lake City, Utah 84111
> jwhite@parsonsbehle.com
> rhughes@parsonsbehle.com
>
> *Attorneys for Plaintiff UTOPIA*

/s/ Rachel DiFrancesco

112915040.11 0058291-00003