David L. Mortensen (#8242)
    Email: dmortensen@foley.com
Tanner B. Camp (#17805)
    Email: tcamp@foley.com
FOLEY & LARDNER LLP
299 S. Main Street, Suite 2000
Salt Lake City, UT 84111
Telephone: (801) 401-8900
Fax: (385) 799-7576

*Attorneys for Defendants American
Fork, David Bunker, and Brad Frost*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UTAH TELECOMMUNICATIONS OPEN INFRASTRUCTURE AGENCY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF AMERICAN FORK, DAVID BUNKER in his official capacity as American Fork City Administrator, and BRAD FROST in his official capacity as American Fork City Mayor,<br><br>Defendants. | **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Case No. 2:21-cv-00600<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

i

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     ARGUMENT ......................................................................................... 2

     A.      UTOPIA's Preemption Claim Fails. ........................................... 2

          1.      UTOPIA Does Not Invoke Equitable Preemption "As a
               Shield." .............................................................................. 3

          2.      UTOPIA's Preemption Claim Requires that It Have a
               Substantive Right of Its Own to Vindicate. ........................... 4

          3.      UTOPIA Cannot Demonstrate that It Has a Federal Right
               Under Section 253(a). ........................................................... 8

          4.      UTOPIA's Complaint Does Not Challenge a State or Local
               Statute, Regulation, or Legal Requirement. ....................... 13

     B.      Because UTOPIA's Third Cause of Action Fails, this Court Should
         Dismiss the Remaining State Law Causes of Action. ..................... 15

          1.      UTOPIA Provides No Reason for the Court to Retain
               Supplemental Jurisdiction. ................................................ 15

          2.      The ROW Agreement's Forum Selection Clause is Reasonable
               and Should Be Enforced. ..................................................... 16

     C.      UTOPIA Fails to State a Claim Under Its Second and Fourth Causes
         of Action. ..................................................................................... 16

          1.      The "Broader Context" of the Complaint Does Not Save
               UTOPIA's Deficiently-Pled Second Cause of Action. ........ 17

          2.      UTOPIA's Fourth Cause of Action Is Deficiently Pled. ..... 18

**III.    CONCLUSION** ............................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advanced Recovery Sys. LLC*, v. *Am. Agencies LLC*,
   No. 2:13-CV-00283-DAK, 2013 WL 5969837 (D. Utah Nov. 7, 2013) (unpublished)..........17

*Alexander v. Bridgerland Tech. Coll.*,
   No. 1:20-cv-0079-DAK-DAO, 2021 WL 718712 (D. Utah Feb. 24, 2021) (unpublished) ...15,
   16

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015)............................................................................................................5, 6

*In the Matter of AT&T Submarine Sys., Inc.*,
   11 F.C.C. Rcd. 14885 (1996), *petition for review denied by Virgin Islands Tel. Corp. v.
   F.C.C.*, 198 F.3d 921 (D.C. Cir. 1999) ...................................................................................10

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson*,
   P.C., 956 F.3d 1228 (10th Cir. 2020)..............................................................................15, 16

*Bellsouth Telecommunications, LLC v. Louisville/Jefferson County Metro Gov't*,
   No. 3:16-CV-124-TBR, 2016 WL 4030975, (W.D. Ky. July 26, 2016) ...................................3

*Boldt v. Am. Fork City*,
   No. 2:20-cv-817-TC-DAO, 2021 WL 5731587 (D. Utah Dec. 2, 2021) (unpublished) ..18, 19,
   20

*CNSP, Inc. v. City of Santa Fe*,
   755 F. App'x 845 (10th Cir. 2019) (unpublished) ........................................................5, 7, 10

*CNSP, Inc. v. Webber*,
   No. CV 17-0355 KG/SCY, 2020 WL 2745456 (D.N.M. May 27, 2020 (unpublished)..5, 7, 10

*Crown Castle Fiber LLC v. City of Charleston*,
   448 F. Supp. 3d 532 ..............................................................................................................14

*Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*
   No. 12-CV-6157 CS, 2013 WL 3357169 (S.D.N.Y. July 3, 2013) ........................................10

*Franklin v. Gwinnett Cty, Pub. Sch.*,
   503 U.S. 60, 65-66, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992)..............................................6

*Frasier v. Evans*,
    992 F.3d 1003 (10th Cir. 2021) ....................................................................7

*Hancock v. N. Sanpete Sch. Dist.*,
    No. 2:12-CV-00073, 2012 WL 3060118 (D. Utah July 25, 2012) (unpublished)..................13

*Henderson v. National Railroad Passenger Corp.*,
    412 F. App'x 74, 79 (10th Cir. 2011) ..................................................16

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
    774 F.3d 895 (6th Cir. 2014) ..........................................................4

*N.M. Gas Co. v. Bd. of Cty. Comm'rs of Bernalillo Cty., N.M.*,
    423 F. Supp. 3d 1190 (D.N.M. 2019) ................................................14

*Nixon v. Mo. Mun. League*,
    541 U.S. 125 (2004)...........................................................10, 11, 12

*Safe Sts. All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) .................................................2, 5, 6, 7, 8, 9, 12

*Sprint Telephone PCS, L.P. v. Cty, of S.D.*,
    543 F.3d 571, 580 (9th Cir. 2008) ....................................................14

*St. Benedict's Development Co. v. St. Benedict's Hospital*,
    811 P.2d 194, 200 (Utah 1991)........................................................18

*Team Master Plan, LLC v. Daniels*,
    4:19-cv-00036-DN-PK, 2020 WL 2926662 (D. Utah June 3, 2020) (unpublished) ..............14

*Qwest Corp. v. City of Santa Fe, N.M.*,
    380 F.3d 1258, 1266 (10th Cir. 2004) ..............................................4, 14

*Underground Constr. Co. v. City & Cty. of S.F.*,
    No. C 01-3707 MMC, 2002 WL 1585628 (N.D. Cal. July 15, 2002) (unpublished)...............9

*Virgin Mobile USA, L.P. v. Pat Apple*,
    No. 17-CV-2524-JAR-JPO, 2018 WL 2926576 (D. Kan. June 7, 2018) ................3

*Virginia Off. For Prot. & Advoc. v. Stewart*,
    563 U.S. 247, 260, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011)................................5

**State Cases**

*Backbone Worldwide Inc. v. LifeVantage Corp.*,
    2019 UT App. 80, 443 P.3d 780 ...........................................................................17

*Count My Vote, Inc. v. Cox*,
    2019 UT 60, 452 P.3d 1109 ...............................................................................19

*Lee v. Gaufin*,
    867 P.2d 572, 577 (Utah 1993) .........................................................................19

*Malan v. Lewis*,
    693 P.2d 661, 670 (Utah 1984) .........................................................................19

*Salt Lake City Corp. v. Haik*,
    2019 UT App. 4, 438 P.3d 913 ...............................................................18, 19, 20

*Spencer v. Utah State Bar*,
    2012 UT 92, 293 P.3d 360 .................................................................................19

*State v. Mohi*,
    901 P.2d 991, 997 (Utah 1995) .........................................................................19

**Federal Statutes**

Telecommunications Act Section 47 U.S.C. 253(a) ...................1, 2, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15

**State Statutes**

Utah Code § 11-13-203(1) ...................................................................................12

Code § 12.040.030(B) ........................................................................................14

## I.      INTRODUCTION

Utah Telecommunications Open Infrastructure Agency ("UTOPIA") is trying to transform a straightforward contract dispute with American Fork, David Bunker, and Brad Frost (collectively, "American Fork") into a federal Telecommunications Act ("TCA") lawsuit. But Tenth Circuit and U.S. Supreme Court case law preclude it from doing so. As such, this case should be dismissed and addressed (if at all) in the Fourth Judicial District Court in and for Utah County.

UTOPIA's only federal claim—its Third Cause of Action for violation of Section 253(a) of the TCA—should be dismissed because, as a political subdivision of the state, UTOPIA does not have a substantive right of its own to vindicate under the statute. In its opposition, UTOPIA asserts that it does not need a substantive right under the statute to pursue its preemption claim, and that, even if it did, UTOPIA has pled such a right. But, in making this argument, UTOPIA is forced to spend many pages fruitlessly trying to avoid and explain away established case law showing the opposite. Put simply, UTOPIA is not an "entity" that provides "telecommunication service" within the meaning of Section 253(a) of the TCA. Thus, it has not been given a substantive right under the statute and cannot maintain its claim for equitable preemption.

Because UTOPIA has no federal claim, this Court should decline to exercise supplemental jurisdiction over UTOPIA's remaining state law claims or dismiss those claims based on the doctrine of *forum non conveniens*. On this point, UTOPIA implores the Court to exercise supplemental jurisdiction over the state law claims but offers no reason why and overlooks well-established Tenth Circuit practice of dismissing state law claims when the only federal claim has been dismissed early in the case. UTOPIA also gives no reason why—absent

1

the federal claim—this Court should relieve UTOPIA of its agreement in the Right of Way

Licensing Agreement ("ROW Agreement") and not dismiss the claims based on a valid and

enforceable forum selection clause.

Lastly, even if the Court decides to consider the remaining state law claims, UTOPIA's

Second and Fourth Causes of Action are deficiently pled. UTOPIA, of course, disagrees, but in

doing so fails (again) to appreciate case law setting forth UTOPIA's burden for pleading those

claims. UTOPIA has not pled the necessary facts for those claims and, accordingly, the Second

and Fourth Causes of Action should be dismissed.

For these reasons, and as further discussed below, American Fork respectfully requests

that the Court grant its Motion to Dismiss Complaint ("Motion") and dismiss UTOPIA's

Complaint in its entirety.

## II.        ARGUMENT

### A.        UTOPIA's Preemption Claim Fails.

In its Opposition to the Motion ("Opposition"), UTOPIA repeatedly asserts that claims

for preemption based on TCA violations are viable under the law. (*See* Opp'n, ECF No. 25, at 4-

7.) American Fork does not disagree. But from that point, UTOPIA goes too far. It argues that

*anyone* can bring an equitable preemption claim against *any government* official for *any*

*violation* of *any federal law* unless the statute forecloses such relief. (*See id.* at 6-7, 11.) That is

not the law. To assert a claim under the Supremacy Clause that a local enactment is preempted

by federal law, a plaintiff must have "a federal right of her or his own to vindicate" under the

statute at issue. *See Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017). And

UTOPIA does not have such a right under Section 253(a) of the TCA. Thus, its preemption claim

2

fails as a matter of law.

Seeking to unnecessarily complicate and confuse the issue, UTOPIA makes a host of incorrect and hyper-technical arguments. As set forth below, none of UTOPIA's arguments change the outcome.

### 1.   UTOPIA Does Not Invoke Equitable Preemption "As a Shield."

As a preliminary matter, UTOPIA claims that it "invokes equitable preemption as a shield, not a sword." (*See* Opp'n at 5.) But a close examination of the cases UTOPIA cites and the allegations in its Complaint prove otherwise.

In each case UTOPIA cites, the plaintiff invoked *Ex parte Young* to prevent a government entity from enforcing a state or local ordinance that allegedly violated federal law. In *CNSP, Inc. v. Webber*, an internet service provider ("ISP) sought to enjoin enforcement of an ordinance that would have imposed fees on the ISP on the ground that the ordinance violated the TCA. No. CV 17-0355 KG/SCY, 2020 WL 2745456, at *3 (D.N.M. May 27, 2020) ("*CNSP II*") (unpublished). In *Virgin Mobile USA, L.P. v. Pat Apple*, a telecommunications provider sought an injunction preventing the state from enforcing an order requiring the company to "report as retail revenue the subsidies that it received from the Federal Universal Service Fund's Lifeline Program." No. 17-CV-2524-JAR-JPO, 2018 WL 2926576, at *1 (D. Kan. June 7, 2018) (unpublished). And in *Bellsouth Telecommunications, LLC v. Louisville/Jefferson County Metro Government*, AT&T sought an injunction preventing the defendant from enforcing an ordinance that would allow a third party to "relocate or alter" AT&T's property to accommodate the third party's equipment. No. 3:16-CV-124-TBR, 2016 WL 4030975, at *1 (W.D. Ky. July 26, 2016)

3

(unpublished).

Here, in contrast, UTOPIA does not seek to enjoin American Fork from enforcing any local law or ordinance. Rather, it asks the Court to enjoin American Fork from allegedly discriminating against it by not approving its right-of-way permit applications. (*See, e.g.*, Compl. ¶¶ 57, 60, 106; *id.* at 27.) UTOPIA characterizes this "as a shield, not a sword." (*See* Opp'n at 5.) But what UTOPIA seeks is a Court order forcing American Fork to approve UTOPIA's permits. It is not asking the Court to prevent the City from enforcing a local ordinance. Indeed, American Fork is not affirmatively seeking to enforce its ordinances on UTOPIA. Rather, it is UTOPIA that is seeking to force American Fork to open its city to a service provider created by other municipalities. UTOPIA is, therefore, not seeking to use preemption as a shield but as a sword to impose its will on American Fork. As such, UTOPIA's attempt to equate itself with parties who have invoked *Ex parte Young* defensively falls flat. *See Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) ("But matters differ when litigants wield *Ex parte Young* as a cause-of-action *sword*. In that setting . . . the State is not threatening to sue anyone, precluding an anti-suit injunction from doing the work.").

**2.    UTOPIA's Preemption Claim Requires that It Have a Substantive Right of Its Own to Vindicate.**

UTOPIA also claims that it does not need a substantive right under Section 253(a) of the TCA to enforce the statute. (*See* Opp'n at 7-11.) UTOPIA is wrong.

In *Qwest Corp. v. City of Santa Fe, N.M.*, the Tenth Circuit stated that a "party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action." 380 F.3d 1258, 1266 (10th Cir. 2004). The

4

Supreme Court later clarified, however, that "no implied right of action [is] contained in the Supremacy Clause" and that the ability to sue to enforce the clause "is the creation of courts of equity." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). And relying in part on *Armstrong*, the Tenth Circuit held that to invoke a federal court's equitable powers, a plaintiff seeking to enforce a federal statute must have "been given a federal right of his or her own to vindicate under the statute at issue in the case." *Safe Sts.*, 859 F.3d at 902 (internal quotation marks and alterations omitted) (citing *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 260 (2011)).

Despite this authority, in its Opposition, UTOPIA goes through a series of mental gymnastics to try and persuade this Court to ignore *Safe Streets*. *First*, UTOPIA argues that *Safe Streets* has different facts. (*See* Opp'n at 8.) But even though the case involved different facts and a different statute does not mean the Tenth Circuit's conclusions regarding "prerequisites to private suits to enforce federal statutes" do not apply more broadly. *See Safe Sts.*, 859 F.3d at 903. Indeed, the Tenth Circuit itself thought those conclusions were applicable in a later case involving the same type of claim that UTOPIA seeks here: a claim for equitable preemption based on an alleged violation to the TCA. *See See CNSP, Inc. v. City of Santa Fe*, 755 F. App'x 845, 849-50 (10th Cir. 2019) ("*CNSP I*") (unpublished) (remanding case to district court to consider plaintiff's claim in light of the rulings in *Armstrong* and *Safe Streets*). Thus, UTOPIA cannot avoid the outcome in *Safe Streets* simply because the facts were different.

*Second*, UTOPIA implies without support that its claim for preemption is of the sort that *Safe Streets* allegedly excluded from its holding. (*See* Opp'n at 8-9.) But *Safe Streets* merely noted that despite its holding, "preemption-based affirmative defenses to enforcement actions

still exist." *Safe Sts.*, 859 F.3d at 892, n.5. And it devoted "comparatively little of [its] analysis to

such defenses" because they were not at issue in the case. *Id.* As discussed above, while

UTOPIA tries to frame its claim here as one involving a "preemption-based affirmative defense,"

the City is not forcing (or attempting to force) UTOPIA to do anything. (*See supra* Section

II.A.1.) Moreover, as argued more below, the nature of the party bringing the equitable

preemption claim matters since not every person or entity will have a substantive right under any

given statute, including the TCA. (*See infra* Section II.A.3.) Thus, UTOPIA does not fall within

any exception to *Safe Streets*.

   *Third*, UTOPIA argues that *Safe* Streets "imposed far more conditions on equitable

preemption claims" than contemplated by the Supreme Court in *Armstrong*. Not so. Rather, in

*Safe Streets* the Tenth Circuit carefully analyzed *Armstrong* and other cases to reach its

conclusion that to invoke a court's equitable powers, a plaintiff seeking to enforce a federal

statute "must have a federal right that he or she possesses against the defendant." *See Safe Sts.*,

859 F.3d at 899-902. Regarding *Armstrong* specifically, the Tenth Circuit found that the

Supreme Court had "relied on an initial determination" in the case "that the [medical] providers

claimed to be vindicating their federal substantive rights by enforcing the very federal statute that

allegedly created those rights." *Id.* at 901 (citing *Armstrong*, 575 U.S. at 322-24). And the

mention of potential relief for the providers in *Armstrong* "presuppose[d] the existence of a

substantive right that [had] been infringed upon." *Id.* at 899, n.9 (citing *Franklin v. Gwinnett Cty.

Pub. Sch.*, 503 U.S. 60, 65-66 (1992)) (responding to the Judge Hartz's concurrence).

   The fact that the concurrence in *Safe Streets* did not agree with the majority's reasoning,

or that subsequent opinions have noted the division in *Safe Streets*, is of no moment. (*See* Opp'n

at 9-10.) Judge Hartz's concurrence is not the opinion of the Tenth Circuit in *Safe Streets* and is therefore not binding on this Court. *See Frasier v. Evans*, 992 F.3d 1003, 1077 (10th Cir. 2021). And UTOPIA offers no reason or authority that this Court should (or could) disregard the holding in *Safe Streets* simply because the judges were not in complete agreement. Were that the case, lower courts could disregard virtually every case decided by the U.S. Supreme Court and many decided by the Circuit Courts.

Moreover, contrary to UTOPIA's claim, the District of New Mexico's treatment of *Safe Streets* on remand supports that to pursue a claim of equitable preemption, a plaintiff must have a substantive right of its own to vindicate under the statute at issue. *See CNSP II*, 2020 WL 2745456, at *9. Specifically, in light of *Safe Streets*, the district court found that it had to "determine whether the TCA provides Plaintiff a substantive right of enforcement" *Id.* And because of the nature of the plaintiff as a telecommunications provider, the district court concluded that it did. *See id.* at *8-9.[1] Unlike the plaintiff in *CNSP*, UTOPIA is not a telecommunications provider within the meaning of the statute and therefore does not have a substantive right of its own to vindicate. (*See infra* Section II.A.3.) Thus, UTOPIA finds no relief in *CNSP*.

*Finally*, UTOPIA argues that American Fork conflates "equitable preemption with a cause of action for preemption under the [TCA]" and imposes a "merits-based analysis onto the threshold question of whether UTOPIA has alleged a plausible cause of action for equitable

---

[1] The district court in *CNSP II* also faulted defendants for conflating a "'private right of action' to pursue a constitutional claim with a statutory 'substantive right' to pursue equitable relief under *Ex part Young*." *CNSP II*, 2020 WL 274546, at *9. This is the exact conflation that UTOPIA makes at multiple points in its Opposition. (*See* Opp'n at 7-8, 11.)

preemption." (Opp'n at 10-11.) American Fork admits it does not understand UTOPIA's argument. American Fork is not making a merits based argument. It is not arguing that UTOPIA has failed to state an equitable preemption claim because there has been no violation of the TCA—which would be a merits-based argument. Rather, American Fork uses the statutory text and cases interpreting the text to argue that UTOPIA did not (and cannot) allege that it is the type of entity that can assert a preemption claim based on a violation to the TCA. (*See* Mot., ECF No. 14, at 9-11); *see also Safe Sts.*, 859 F.3d at 901 (noting that an "Article III court sitting in equity remains bound to a federal statute's text"). That is a standing type argument, separate from the merits of UTOPIA's claim.

Ultimately, UTOPIA cannot run from Tenth Circuit case law that is binding on this Court. That case law holds that to maintain a claim for equitable preemption, a plaintiff must demonstrate that it has a substantive right of its own to vindicate under the statute at issue. *See Safe Sts.*, 859 F.3d at 902-03.

### 3. UTOPIA Cannot Demonstrate that It Has a Federal Right Under Section 253(a).

Undoubtedly sensing the weakness in its prior arguments, UTOPIA next argues that even if UTOPIA must identify a substantive right of its own to vindicate to maintain a claim for equitable preemption, UTOPIA did so in the Complaint. (*See* Opp'n at 11-19.) In making this argument, UTOPIA faults American Fork for relying on legal authority that UTOPIA claims does not address how "the nebulous requirements of *Safe Streets* actually apply to UTOPIA." (*Id.* at 12-13.) Again, UTOPIA misunderstands and misrepresents American Fork's argument. As directed by *Safe Streets* and as set forth in the Motion and below, American Fork uses the

TCA's statutory text and cases interpreting the text to demonstrate that UTOPIA does not have a substantive right under the statute because UTOPIA is not a private provider of telecommunications service.

> ### a. UTOPIA Does Not Sufficiently Allege that It Is a Provider of Telecommunications Service.

Section 253(a) of the TCA removes state and local barriers to entry for providers of "telecommunications service." 47 U.S.C. § 253(a). "Telecommunications service" is defined as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public."[2] *Id.* § 153(50). UTOPIA argues that it satisfies the second part of this definition and therefore qualifies as a provider of telecommunications service under the statute. (*See* Opp'n at 13-15.) That is incorrect.

UTOPIA alleges that it was formed to finance, build, and operate "the infrastructure and related facilities necessary to provide high-speed fiber-optic connections directly to residences, businesses, and government agencies." (Compl. ¶ 9.) While UTOPIA provides the "infrastructure and related facilities" (the "Network"), "it generally does not provide customers" with broadband internet service. (*Id.* ¶ 10.) Rather, the internet service is provided by ISPs that contract to use UTOPIA's Network. (*Id.*)

In other words, by its own allegations, UTOPIA does not offer telecommunications services to the public. Rather, similar to a company that constructs and installs conduit, *see Underground Constr. Co. v. City & Cty. of S.F.*, No. C 01-3707 MMC, 2002 WL 1585628, at *2

---

[2] While faulting American Fork for omitting the second part of this definition—"or to such classes of users as to be effectively available directly to the public"—in its Motion, UTOPIA omits a key word from the definition in its Opposition: "directly." (*See* Opp'n at 13.)

(N.D. Cal. July 15, 2002) (unpublished), UTOPIA offers infrastructure to telecommunications providers who in turn actually offer and provide telecommunications directly to the public, (*see id.* ¶¶ 9-10). UTOPIA argues that this constitutes making telecommunications "effectively available directly to the public" because its *customers* will use the Network to provide telecommunications directly to the public. (*See* Opp'n at 13-15.) But UTOPIA identifies no authority supporting the idea that a party can use the offering of telecommunications to its customers' customers to qualify as a provider of telecommunication service.[3] And the Federal Communications Commission ("FCC") appears to have rejected that argument. *In the Matter of AT&T Submarine Sys., Inc.*, 11 F.C.C. Rcd. 14885, ¶ 26 (1996) (finding that it is "contrary to the plain language of the statute" to focus on the "service offerings AT&T-SSI's customers may make rather than what AT&T-SSI will offer"), *petition for review denied by Virgin Islands Tel. Corp. v. F.C.C.*, 198 F.3d 921 (D.C. Cir. 1999). Thus, UTOPIA is not a provider of telecommunications service.

## b.    UTOPIA Is a Political Subdivision.

Ultimately, it does not matter whether UTOPIA provides telecommunications service because UTOPIA is a political subdivision of the state and, thus, is not covered under Section 253(a) of the statute. *See Nixon v. Mo. Mun. League*, 541 U.S. 125, 128-29, 138 (2004).

---

[3] UTOPIA does cite *Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.* No. 12-CV-6157 CS, 2013 WL 3357169, at *1 (S.D.N.Y. July 3, 2013) and *CNSP I* but only to support a point on standing. (*See* Opp'n at 15, n.1.) Neither case supports UTOPIA's argument that owning and operating the Network constitutes an "offering of telecommunications . . . to such classes of users as to be effectively available directly to the public." *See CNSP I*, 755 F. App'x at 846-48 (involving a telecommunications company that neither party disputed offered telecommunications directly to the public); *Crown Castle*, 2013 WL 3357169, at *15 (assuming only for "the sake of argument" that plaintiff plausibly pled that it was offering "telecommunications service").

Seeking to avoid this authority, UTOPIA makes two arguments as to why *Nixon* does not affect its ability to bring a preemption claim based on the TCA. *First*, UTOPIA argues that it "undoubtedly falls within the plain meaning of the phrase 'any entity.'" (Opp'n at 15-16.) But this was the exact textual argument addressed—and rejected—by the Supreme Court in *Nixon*. The Supreme Court found that the term "'any' can and does mean different things depending on the setting." *Nixon*, 541 U.S. at 132. And using a "broader frame of reference," the Court concluded that "the strange and indeterminate results of using federal preemption to free public entities from state or local limitations is the key to understanding that Congress used 'any entity' with a limited reference to any *private* entity when it cast its preemption net." *Id.* at 133 (emphasis added). The cases cited by UTOPIA are unhelpful since they do not deal with the TCA, and either predate *Nixon* or stand for the unremarkable position that courts rely on the "ordinary meaning" of words when interpreting statutory text. (*See* Opp'n at 16.) Those generic cases cannot alter the Supreme Court's clear decision in *Nixon*.

*Second*, UTOPIA argues that American Fork reads *Nixon* more broadly than it should and that the decision does not "extend to independently chartered entities like UTOPIA." (*See id.* at 15, 17-19.) In support of this argument, UTOPIA points to the underlying FCC order in *Nixon*, which implied that independent or "separately chartered" municipal utilities may seek preemption based on Section 253. *See Nixon*, 541 U.S. at 130, n.2 ("The question whether § 253 preempts state and municipal regulation of these types of entities is not before us, and we express no view as to its proper resolution.") But, there, the FCC determined whether an entity was a "political subdivision" or an "independent entity" by referring to state law. *See id.* And under Utah law, an interlocal entity, although "separate from the public agencies that create it," is a

11

"political subdivision of the state" and thus covered by *Nixon's* ruling. *See* Utah Code § 11-13-203(1). UTOPIA completely ignores this language in the Utah Code.[4]

UTOPIA also argues that the reasoning behind *Nixon* makes it inapplicable here. (*See* Opp'n at 17-18.) But the Court's reasoning—which included a concern regarding a government's ability to regulate itself and the subdivisions through which it acts—does not limit its conclusion regarding the meaning of "any entity" in the statute. *See Nixon*, at 128. The *Nixon* Court held that "any entity" in Section 253(a) of the TCA does not refer to or include a state's own subdivisions. *Id.* at 128-29. This conclusion is conclusive in determining whether a particular plaintiff has been given a substantive right under the statute. *See Safe Sts.*, 859 F.3d at 903 (looking to the text of a statute to determine to whom a statute gives substantive rights). UTOPIA is a political subdivision and, therefore, is not covered by Section 253(a).

Finally, UTOPIA suggests that it and the private ISPs that use its Network will be without remedy if UTOPIA is unable to bring a claim under the TCA against American Fork. That is simply not correct. While American Fork disputes UTOPIA's claims, UTOPIA can pursue its breach of contract claim and the private ISPs can pursue any rights they may have as private providers of telecommunications. Thus, while their claims would not be meritorious, UTOPIA and the private ISPs have a potential remedy. Because UTOPIA is a political subdivision of the State of Utah, however, it does not have a substantive right of its own to

---

[4] UTOPIA also implies that the Supreme Court's decision in *Nixon* was limited strictly to municipalities. (*See* Opp'n at 17.) But this implication misreads the text of *Nixon* and ignores the fact that the plaintiffs in *Nixon* included municipality-owned utilities. *See Nixon*, 541 U.S. at 125; *see also id.* at 135, n.4 (noting that the Court granted certiorari "to consider whether municipalities are subsumed under the rubric 'any entity'" rather than the "hypothetical situation in which a State were to decide . . . against its own delivery of telecommunications services").

vindicate under Section 253(a) of the TCA. Its Third Cause of Action therefore fails.

### 4.   UTOPIA's Complaint Does Not Challenge a State or Local Statute, Regulation, or Legal Requirement.

Beyond that, UTOPIA's Third Cause of Action also fails because UTOPIA does not challenge a "state or local regulation, or other state or local legal requirement" that prohibits or has the effect of prohibiting the ability of any entity to provide telecommunications service. *See* 47 U.S.C. 253(a).

In its Opposition, UTOPIA claims that it is challenging the "unwritten legal requirement that only private entities are allowed to operate in American Fork" and the alleged "unfettered discretion" that American Fork has over right-of-way decisions." (Opp'n at 20.) In addition to contradicting UTOPIA's argument about whether it is a political subdivision under *Nixon*, this argument is simply incorrect. UTOPIA does not ever mention this "unwritten legal requirement" or "unfettered discretion" in its Complaint. Rather, at most, it only claims that American Fork does not follow its own requirements when issuing permits and engaged in preferential treatment of certain entities. (*See, e.g.*, Compl. ¶¶ 29, 107.) The Court should disregard UTOPIA's new allegations and theories advanced for the first time in its Opposition. *See Hancock v. N. Sanpete Sch. Dist.*, No. 2:12-CV-00073, 2012 WL 3060118, at *1 (D. Utah July 25, 2012) (unpublished) (concluding that new allegations asserted by plaintiffs in opposition to a motion to dismiss were "not before the Court" for purposes of deciding the motion).

Even considering UTOPIA's new allegations and theories, UTOPIA's claim fairs no better. UTOPIA has still not identified an actual "state or local regulation, or state or local legal requirement" within the meaning of Section 253(a). *First*, UTOPIA provides no facts—other

than American Fork's individual decisions to deny UTOPIA's permits—that American Fork has an "unwritten requirement" that only "private entities are allowed to operate in American Fork." (*See* Opp'n at 20.) Individual decisions or actions regarding UTOPIA's permits do not amount to a general legal requirement, written or unwritten. *See Crown Castle Fiber LLC v. City of Charleston*, 448 F. Supp. 3d 532, 542-43 (holding that a challenge to a city's inaction or action on a particular plaintiff's permits was not a challenge to a local regulation or legal requirement). And beyond the denial of UTOPIA's permits, UTOPIA's allegation of an unwritten legal requirement is merely a conclusion. *See Team Master Plan, LLC v. Daniels*, 4:19-cv-00036-DN-PK, 2020 WL 2926662, at *1 (D. Utah June 3, 2020) (unpublished) (holding that a court is "not bound to accept the complaint's legal conclusions and opinions, even if they are couched as facts").

*Second*, American Fork Code § 12.040.030(B) does not grant American Fork "unfettered discretion" as UTOPIA claims. It does not contain the same open-ended language as the ordinance in *Qwest*, which allowed the city to enter a lease "*only* when the governing body finds . . . that the lease agreement is in the best interest of the public." *Qwest*, 380 F.3d at 1270 (emphasis added). Instead, the discretion given to the American Fork City Council by Section 12.040.030(B) is specific to the "use and management" of the City's rights-of-way. *See N.M. Gas Co. v. Bd. of Cty. Comm'rs of Bernalillo Cty., N.M.*, 423 F. Supp. 3d 1190, 1208-09 (D.N.M. 2019). The "mere existence of some discretion" in deciding whether proposed uses of its rights-of-way are appropriate does not amount to a prohibition on entities to provide telecommunications service. *See id.* (citing *Sprint Telephony PCS, L.P. v. Cty. of S.D.*, 543 F.3d 571, 580 (9th Cir. 2008)). Thus, even considering the new allegations and legal theories in the

14

Opposition, UTOPIA fails to demonstrate that it is challenging a local regulation or legal

requirement within the meaning of Section 253(a).

      **B.**      **Because UTOPIA's Third Cause of Action Fails, this Court Should Dismiss the Remaining State Law Causes of Action.**

      The only basis for subject matter jurisdiction in UTOPIA's complaint is the federal

question raised by the Third Cause of Action. And because the Third Cause of Action fails, this

Court should decline to exercise supplemental jurisdiction over UTOPIA's remaining state law

claims or dismiss those claims based on the ROW Agreement's mandatory and enforceable

forum selection clause.

      **1.**      **UTOPIA Provides No Reason for the Court to Retain Supplemental Jurisdiction.**

      In its Opposition, UTOPIA argues that even if this Court dismisses the Third Cause of

Action, it should retain supplemental jurisdiction over UTOPIA's state law claims simply

because the Court has discretion to do so. (*See* Opp'n at 23-24.) While the Court may have the

discretion, UTOPIA ignores Tenth Circuit case law establishing that the general practice in the

Tenth Circuit is to dismiss state claims "when the claims over which the district court had

original jurisdiction are dismissed on pretrial motion." *Barnett v. Hall, Estill, Hardwick, Gable,*

*Golden & Nelson*, P.C., 956 F.3d 1228, 1231, 1239 (10th Cir. 2020); *see also Alexander v.*

*Bridgerland Tech. Coll.*, No. 1:20-cv-0079-DAK-DAO, 2021 WL 718712, at *4 (D. Utah Feb.

24, 2021) (unpublished) (stating that supplemental jurisdiction "usually should not be exercised

when the federal claims have been dismissed"). This Court should do likewise.

      UTOPIA's reliance on *Henderson v. National Railroad Passenger Corp.* is misplaced.

There, the Tenth Circuit affirmed the district court's decision to maintain jurisdiction over state

law claims even after plaintiffs' only federal claim was dismissed. 412 F. App'x 74, 79 (10th Cir. 2011) (unpublished). But, importantly, at the time of the requested remand, the parties had already filed a joint status report and discovery plan, served initial disclosures, attended a scheduling conference, exchanged written discovery, taken multiple depositions, and designated expert witnesses. *Id.* In contrast, here, the parties have not engaged in any discovery or pretrial activity other than briefing on the current Motion. Thus, unlike in *Henderson*, judicial economy and fairness do not support this Court retaining jurisdiction if the Third Cause of Action is dismissed. *See Barnett*, 956 F.3d at 1239 ("In this case the district court resolved the federal-law claims at a very early stage of the litigation. This in itself counsels dismissal without prejudice of the state-law claims *at the same time.*" (emphasis added)).

### 2.   The ROW Agreement's Forum Selection Clause is Reasonable and Should Be Enforced.

UTOPIA's only argument against enforcement of the ROW Agreement's forum selection clause is that doing so "would require the litigation of the same issues in different courts." (Opp'n at 25.) As argued above, however, UTOPIA's only federal claim is deficient and should be dismissed. (*See supra* Section II.A.) And UTOPIA provides no reason—absent the federal claim—why the remaining state law claims could not or should not be adjudicated in the parties' agreed upon forum. Thus, if the Court dismisses UTOPIA's federal claim, it should enforce the ROW Agreement's forum selection clause and dismiss the remaining state law claims under the doctrine of *forum non conveniens*. (*See* Mot. at 14-15.)

### C.   UTOPIA Fails to State a Claim Under Its Second and Fourth Causes of Action.

Finally, even if this Court decides to consider UTOPIA's state law claims, the Second

and Fourth Causes of Action have not been properly pled and should be dismissed.

### 1. The "Broader Context" of the Complaint Does Not Save UTOPIA's Deficiently-Pled Second Cause of Action.

UTOPIA's Second Cause of Action is for breach of the covenant of good faith and fair dealing. UTOPIA argues that when "[t]aken as a whole," the Complaint asserts allegations that support this claim and go "well beyond simple breach of contract." (Opp'n at 28). Specifically, UTOPIA focuses on the alleged reasons that American Fork failed to grant UTOPIA's permits or terminated the ROW Agreement, and argues that the City's alleged improper motives are sufficient to state a claim. (*Id.* at 27-28.)

UTOPIA's argument fails to appreciate that the parties' rights and obligations related to the granting of permits and termination of the ROW Agreement flowed directly from the contract. *See Advanced Recovery Sys. LLC*, v. *Am. Agencies LLC*, No. 2:13-CV-00283-DAK, 2013 WL 5969837, at *6 (D. Utah Nov. 7, 2013) (unpublished) (holding that where allegations supporting the breach of covenant of good faith and fair dealing "are based on express terms of the contract, courts must rely solely on the contract itself and cannot entertain claims based on an implied duty to perform in good faith" (citation and internal quotation marks omitted)). The ROW Agreement addresses both the application process for permits and termination of the agreement. (*See* Mot., Ex. 1 (ROW Agreement) at 1-2.) Thus, any alleged purposes or motives regarding the consideration of permits or termination of the ROW Agreement are irrelevant. *Cf. Backbone Worldwide Inc. v. LifeVantage Corp.*, 2019 UT App. 80, ¶ 24, 443 P.3d 780, 787 ("[A]s long as the party has an express and objectively determined right to terminate . . ., that party may exercise that right, and its motives for doing so are irrelevant, despite the existence of

the implied covenant." (citations omitted).[5] The law does not allow UTOPIA to expand its

contract claim by asserting a claim for breach of the implied covenant of good faith and fair

dealing that is not found within the agreement.

### 2.   UTOPIA's Fourth Cause of Action Is Deficiently Pled.

#### a.   UTOPIA Downplays Its Pleading Burden.

UTOPIA's fourth cause of action is for alleged violation of Article I, section 24 of the

Utah Constitution ("Uniform Operations Provision"). To state a "class of one" claim (like

UTOPIA's) under the Uniform Operations Provision, UTOPIA must allege "that others similarly

situated in every material respect were treated differently and that this difference in treatment

was without rational basis, that is, the government was irrational and abusive, and wholly

unrelated to any legitimate state activity." *Boldt v. Am. Fork City*, No. 2:20-cv-817-TC-DAO,

2021 WL 5731587, at *8 (D. Utah Dec. 2, 2021) (unpublished); *see Salt Lake City Corp. v. Haik*,

2019 UT App. 4, ¶ 73, 438 P.3d 913, 926. As an initial matter, UTOPIA argues that *Boldt* and

*Haik* incorrectly rely on cases interpreting the federal Equal Protection Clause and impose an

improper "heightened pleading standard" on UTOPIA's Fourth Cause of Action. But UTOPIA is

wrong.

UTOPIA cites Utah Supreme Court cases from the 80s and 90s to support its argument

that "Utah's uniform operation of laws provision establishes different requirements than does the

---

[5] UTOPIA's citation of *St. Benedict's Development Co. v. St. Benedict's Hospital*, is inapposite because there, "in addition to the hospital's express promises, the language in the agreements and the parties' conduct indicate[d] an intent to cooperate in acquiring and retaining tenants for both of the buildings leased by the development company." 811 P.2d 194, 200 (Utah 1991). Here, UTOPIA has not alleged any implied promises separate and apart from obligations flowing directly from the contract.

federal Equal Protection Clause," which can produce "different legal consequences." (*See* Opp'n at 29-30 (citing *State v. Mohi*, 901 P.2d 991, 997 (Utah 1995); *Lee v. Gaufin*, 867 P.2d 572, 577 (Utah 1993); *Malan v. Lewis*, 693 P.2d 661, 670 (Utah 1984)).) More recently, however, the Utah Supreme Court stated that "[t]he modern formulation of uniform operation" in the Uniform Operations Provision is "a state-law equivalent to the federal Equal Protection Clause." *Count My Vote, Inc. v. Cox*, 2019 UT 60 ¶ 29, 452 P.3d 1109, 1115; *see also Spencer v. Utah State Bar*, 2012 UT 92, ¶ 26, 293 P.3d 360, 368 ("[T]he uniform operations of law provision and the Equal Protection Clause address similar concerns and are substantially parallel."). Thus, cases like *Haik* and *Boldt*, which rely in part on cases addressing class-of-one claims under the Equal Protection Clause, are instructive when considering class-of-one claims under the Uniform Operations Clause.[6]

> **b.   UTOPIA Does Not Allege Facts Sufficient to State a Claim for Violation of Utah's Uniform Operation of Laws Provision.**

UTOPIA also argues that assuming the "heightened pleading standard applies," UTOPIA's allegations in the Complaint meet that standard. *First*, UTOPIA argues that its allegations are sufficient to show that similarly situated entities were treated differently than UTOPIA. (*See* Opp'n at 31-32.) But UTOPIA's attempt to identify allegations that show it was similarly situated to other companies identified in the complaint falls flat. For example, according to UTOPIA, the Complaint alleges that UTOPIA competes with Xfinity, CentruyLink, and Google Fiber. (Opp'n at 31 (citing Compl. ¶ 13).) But at most, the Complaint states that

---

[6] Importantly, the Uniform Operations Clause cases that UTOPIA cites in support of a lesser pleading standard did not involve "class of one" claims. (*See* Opp'n at 29-30.)

these companies compete with other ISPs, *i.e.*, UTOPIA's customers. (*See* Comp. ¶¶ 12-14.) UTOPIA also points to allegations that American Fork entered into agreements with other companies that were "very similar, if not identical to, the ROW Agreement between UTOPIA and American Fork." (Opp'n at 31 (citing Compl. ¶¶ 62-63).) But this only alleges that the *agreements* were similar; not the companies that entered them.

In fact, the Complaint demonstrates that UTOPIA is different from all the other companies identified therein. Most importantly, the other companies identified in the complaint are "ISPs" or "telecommunications providers" that offer telecommunications directly to consumers. (*See, e.g.*, Compl. ¶¶ 12-14, 62, 63, 104, 105.) UTOPIA faults American Fork for not explaining why this "distinction is material." But it is not difficult see why it is. Indeed, the distinction highlights two entirely different business types offering different services to different types of customers. And, contrary to UTOPIA's contention, it cannot simply allege that these companies were similarly situated in *one* respect. (*See* Opp'n at 33.) Rather, UTOPIA must allege that they were "similarly situated in *every material respect*" and were treated differently. *See Boldt*, 2021 WL 5731587, at *8 (emphasis added). UTOPIA has not even tried to satisfy that burden.

*Second*, UTOPIA argues that its allegations are sufficient to show that "American Fork lacked a rational basis for its disparate treatment of UTOPIA." (*See* Opp'n at 33-34.) But to satisfy this element of UTOPIA's "class of one" claim, the Complaint must allege facts demonstrating a "totally illegitimate animus toward" UTOPIA by American Fork. *Haik*, 2019 UT App. ¶ 73. UTOPIA's allegations do not come close to meeting this standard. At most it alleges (on information and belief) that American Fork treated UTOPIA differently than others

applying for right-of-way permits. (*See* Opp'n ¶¶ 43-47.) It also alleges that the ROW

Agreement was terminated for no reason. (*See* Compl. ¶ 56.) These allegations do not satisfy the

standard because either party could properly terminate the agreement with 90 days of notice.

(*See* Mot., Ex. 1 at 1).

Put simply, the allegations in UTOPIA's complaint fall far short of the substantial burden

of pleading a "class of one" claim under the Uniform Operations Clause. Thus, UTOPIA's

Fourth Cause of Action should be dismissed.

### III.      CONCLUSION

For the foregoing reasons, American Fork respectfully requests that the Court grant its

Motion and dismiss UTOPIA's Complaint in its entirety.


DATED:  March 28, 2022                          **FOLEY & LARDNER LLP**


                                                /s/ *David L. Mortensen*
                                                David L. Mortensen
                                                Tanner B. Camp

                                                *Attorneys for Defendants American Fork,*
                                                *David Bunker, and Brad Frost*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2022, a copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** was served via the Court's ECF filing system on the following:

> Juliette P. White
> Robert H. Hughes
> PARSONS BEHLE & LATIMER
> 201 South Main Street, Suite 1800
> Salt Lake City, Utah 84111
> jwhite@parsonsbehle.com
> rhughes@parsonsbehle.com
>
> *Attorneys for Plaintiff UTOPIA*

/s/ *Rose Gledhill*